**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| ANGELO CURRO, | : | |
| | : | Case No. 2:19-cv-19198-BRM-JAD |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| HD SUPPLY, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**MARTINOTTI, DISTRICT JUDGE**

     Before the Court is Defendants HD Supply Inc. ("HD Supply"), and HD Supply Management, Inc.'s ("HD Supply Management") (together, "Defendants") Motion to Dismiss the First and Second Counts of the Complaint for the failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 4.) Plaintiff Angelo Curro ("Curro") opposes the Motion. (ECF No. 5.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motions to Dismiss Counts One and Two is **GRANTED** in part and **DENIED** in part.

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

A.  Factual Background

Curro, a resident of Bloomingdale, New Jersey, began working in early 2011 at HD Supply,[2] a corporation with a principal business address in Atlanta, Georgia. (Compl. (ECF No. 1-1) ¶¶ 1, 2.) HD Management also is a corporation with a principal business address in Atlanta, Georgia. (*Id.* ¶ 3.) The Complaint does not state where Defendants are incorporated, nor does it state the business or businesses in which Defendants are engaged.

Curro was a Field Account Representative whose territory in New Jersey included Hudson and Essex counties. (*Id.* ¶ 7.) He alleges he was a top-performing salesman in 2016 and 2017, and received a "good" performance review in 2018 that resulted in a merit raise and bonus. (*Id.* ¶ 8.)

In November 2016, Curro was in a "workplace car accident," from which he sustained severe back injuries, including herniated discs. (*Id.* ¶ 9.) In April 2017, Curro received a poor review. (*Id.* ¶ 12.) In June 2017, Curro made a workers' compensation claim. (*Id.* ¶¶ 10).

At some point, Curro learned from a co-worker that Curro's manager, Bryan Gallino ("Gallino"), was upset about the workers' compensation claim and about Curro's engagement of an attorney to represent him for this claim. (*Id.* ¶ 11.)  Curro responded to this and the poor review by filing, on June 20, 2017, a "detailed written complaint regarding harassment and

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

[2] Curro alleges he also was in the employ of HD Management. (ECF No. 1-1 ¶ 3.) He does not explain the relationship between HD Supply and HD Management, nor how he was simultaneously employed by both entities.

2

discrimination." (*Id.* ¶ 12.) In this report, Curro alleged retaliation and "unlawful and discriminatory actions" by Gallino and his supervisor, Kolah Haskell ("Haskell"). (*Id.* ¶ 13.) The Complaint filed in this action does not describe the unlawful or discriminatory actions. The Complaint also does not state with whom Curro filed this report. The report also maintained that the company was forcing him and other sales representatives to work excessive hours in unsafe working conditions to meet unrealistic sales milestones. (*Id.* ¶ 14.)

In response, Curro was treated in a "disparate and negative fashion by management." (*Id.* ¶ 16.) The terms and conditions of Curro's employment were changed and, ultimately, he was terminated in November 2018 "for completely pretextual reasons." (*Id.*)

### B. Procedural History

Curro filed a Complaint on September 16, 2019, in N.J. Superior Court, Law Division, Hudson County, alleging discrimination and retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD") (Counts One and Two), as well as unlawful retaliation in violation of both New Jersey's Workers' Compensation law (Count Three) and the New Jersey Conscientious Employee Protection Act ("CEPA") (Count Four). (*Id.* ¶¶ 17-34.)

Defendants removed the action to this Court on October 22, 2019. (ECF No. 1.) Defendants filed this Motion on November 12, 2019. (ECF No. 4.) Defendants argue the NJLAD retaliation Count should be dismissed because Curro waived such claims by also filing a CEPA claim. Defendants further contend that, even if Curro did not waive the NJLAD retaliation claim, both NJLAD claims should be dismissed because he has not stated NJLAD claims for which relief could be granted. (*Id.*) Curro filed his opposition to the Motion on December 2, 2019. (ECF No. 5.) Defendants filed a Reply on December 9, 2019. (ECF No. 6.)

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is 'not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## III.   DECISION

Before considering the merits of Curro's claims, the Court first must be satisfied it has subject-matter jurisdiction over this action. *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) (citing *Arrowsmith v. United Press International*, 320 F.2d 219, 221, 6 A.L.R.2d 1072 (3d Cir. 1963)). While no party challenges the Court's subject-matter jurisdiction, "federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. v.*

5

*Senjuu Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

Defendants removed this action alleging jurisdiction under 28 U.S.C. § 1332(a), which provides district courts with original jurisdiction over matters between citizens of different states where the amount in controversy is greater than $75,000.00. Diversity jurisdiction "requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Grand Union Supermarkets of V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). In any case resting on diversity jurisdiction, the Court must determine for itself whether or not every defendant is completely diverse from the plaintiff. *See Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)).

The Complaint alleges only that HD Supply and HD Management have principal paces of business in Atlanta, Georgia. The Complaint is silent on where these companies are incorporated. It is well established a corporation takes on the citizenship of "both its state of incorporation and the state of its principal place of business." *GBForefront*, 888 F.3d 29, 34 (3d Cir. 2018).

However, "[t]he burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Here, that is Defendants. In the Notice of Removal, Defendants maintain HD Supply is a Delaware corporation and HD Management a Florida corporation. (ECF No. 1 ¶¶ 7, 8.) The Court therefore concludes there exists the diversity required by § 1332.

Defendants further maintain the amount in controversy is greater than $75,000.00, as Curro seeks front pay and back pay, as well as other compensation and benefits, emotional distress damages, attorneys' fees under the fee-shifting provisions of LAD and CEPA, and punitive

6

damages. (*Id.* ¶ 10.) "A case may be dismissed for failure to meet the amount in controversy requirement only if it appears to a 'legal certainty' that the claim is for less than the jurisdictional amount." *McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 220 (3d Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999)). Accordingly, the Court concludes the amount-in-controversy requirements of § 1332 also have been met, giving this Court subject-matter jurisdiction over this action. The Court now will address Defendants' arguments that Counts One and Two should be dismissed.

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

#### 1. CEPA Preclusion

Curro alleges Defendants terminated his employment in unlawful retaliation for filing a complaint against his manager and supervisors. Curro claims this behavior violates both the NJLAD (Count Two) and CEPA (Count Four). (ECF No. 1-1 ¶¶ 24-27, 32-33.)

Defendants argue the Court Two NJLAD claim must be dismissed because the CEPA statute, specifically N.J. Stat. Ann. § 34:19-8, precludes alternate remedies for the same retaliatory conduct. (Defs.' Br. in Support of Mot. (ECF No. 4-1) at 6.) In other words, Defendants contend that by bringing a CEPA claim Curro waived the possibility of seeking any NJLAD remedy.

It is well established retaliation claims brought under the LAD can be precluded by CEPA claims in the same Complaint. *See Ivan v. Cty. of Middlesex*, 595 F. Supp. 2d 425, 465–66 (D.N.J. 2009). *See also Figueroa v. City of Camden*, 580 F. Supp. 2d 390 (D.N.J. 2008). However, not every NJLAD claim is waived by assertion of a CEPA claim, only those that would require a finding that would be actionable under CEPA. *Id.* (citing *Bowen v. Parking Authority of the City of Camden,* No. 00–5765, 2003 WL 22145814, at *24 (D.N.J. Sept. 13, 2003) (citing *Young v.*

*Schering Corp.*, 141 N.J. 16, 29, 660 A.2d 1153, 1160 (1995)

Count Two alleges unlawful retaliation in violation of the NJLAD. (ECF No. 1-1 ¶¶ 24-27.) In Count Two, Curro claims he was "treated differently in a negative fashion" by Defendants after he had complained to his manager and supervisors about "the discriminatory, retaliatory and/or harassing behavior of certain supervisory personnel." (*Id.* ¶ 25.) Specifically, this retaliation included, first, changes in the terms and conditions of his employment, and ultimately, termination. (*Id.* ¶ 26.) In Court Four, Curro alleges Defendants retaliated against him in violation of CEPA by the same conduct: changing the terms and conditions of his employment, and ultimately, terminating his employment.

The New Jersey Supreme Court interprets § 34:19-8 to mean

> "once a CEPA claim is 'instituted,' any rights or claims for retaliatory discharge based on a contract of employment; collective bargaining agreement; State law, whether its origin is the Legislature, the courts, the common law or rules of court; or regulations or decisions based on statutory authority, are all waived."

*Young*, 141 N.J. at 29, 660 A.2d at 1160. In other words, "parallel claims based on those rights, privileges and remedies," such as retaliation claims grounded in the NJLAD, "are waived because they represent multiple or duplicative claims based on retaliatory discharge." *Id.*

This Court adhered to the *Young* Court's reading in *Estate of Olivia v. New Jersey*, where the estate of a deceased state trooper was prevented from asserting an NJLAD claim where that claim "closely resembled" the estate's CEPA claim and did not require different proofs. *Id.*

To make a *prima facie* case of illegal retaliation under the NJLAD, Curro must show "(1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 939 (3d Cir. 2009) (citing *Cardenas v. Massey,*

269 F.3d 251, 263 (3d Cir. 2001) (citations omitted)).

To succeed on his CEPA claim, Curro must prove four elements: (1) that he  reasonably believed his employer's conduct violated a law or regulation; (2) that he performed "whistle-blowing activity" as defined in CEPA; (3) that an adverse employment action has been taken against him; and (4) that the whistle-blowing activity caused such adverse employment action. *See Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999); *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003).

"The latter three of these are the elements a plaintiff must prove to prevail on the LAD retaliation claim." *Ivan*, 595 F. Supp. 2d at 466 (citing *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2003 WL 22145814, at \*24 n.49 (D.N.J. Sept. 18, 2003) ("It is 'beyond dispute that the framework for proving a CEPA claim follows that of a LAD claim.'" (quoting *Donofry v. Autotote Sys., Inc.,* 795 A.2d 260, 269 (N.J. Super. Ct. App. Div. 2001)))). It is clear, therefore, that retaliation claims under the NJLAD necessarily fall within the CEPA waiver provision. *Ivan*, 595 F. Supp. 2d at 466 (citing *Sandom v. Travelers Mtg. Servs., Inc.,* 752 F. Supp. 1240, 1244 (D.N.J. 1990)).

Plaintiff counters that any dismissal of Count Two required by CEPA cannot be invoked at this point in the litigation.

The CEPA section at issue states, in relevant part:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee . . . except that the ***institution of an action*** in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J. Stat. Ann. § 34:19-8 (emphasis added).

9

"Institution" is defined as: "The commencement of something, such as a civil or criminal action." Black's Law Dictionary (10th ed. 2014).

Nevertheless, Curro argues the New Jersey Supreme Court in *Young* "very clearly indicated" plaintiffs have "until at least the close of discovery" to chose between pursuing the CEPA claim and any potentially duplicative claims, here the NJLAD claim. (ECF No. 5 at 9 (quoting *Young*, 660 A.2d at 1161).)

The Court is not persuaded by Curro's reliance on *Young*, as the Supreme Court there stated only that § 34:19-8's "institution of an action" language "may be susceptible" of other meanings besides the filing of the complaint and "could conceivably contemplate an election of remedies" occurring after discovery is complete or a pretrial conference is held. *Young*, 141 N.J. at 32, 660 A.2d at 1161. Such conditional language hardly indicates a clear direction from the New Jersey Supreme Court, which has otherwise been silent on this matter.

This Court faced the same question in *Broad v. Home Depot U.S.A., Inc.* and looked to guidance provided by New Jersey's appellate courts. *See* 16 F. Supp. 3d 413 (D.N.J. April 22, 2014) (citing *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 670–71 (3d Cir. 2002) (holding that, in the absence of a controlling decision from a state's highest court on an issue of state law, a federal court sitting in diversity must predict how the court would rule by considering the relevant decisions of the state's appellate courts). Specifically, this Court examined *Maw v. Advanced Clinical Comms.*, also cited by Curro, where the appellate division held that "before electing remedies, a plaintiff should have an opportunity to complete discovery. Only after gaining access to all of the facts will a plaintiff be in a position to make a knowing and meaningful election." *Id.* at 417-18 (citing *Maw*, 820 A.2d 105 (N.J. Super. Ct. App. Div. 2004)).

10

Defendants argue Curro's reliance on *Maw* is misguided because it overlooks the New Jersey Supreme Court's later holding in *Tartaglia v. UBS PaineWebber, Inc.*, where the court stated § 34:19-8 "deems the filing of a CEPA complaint to be an election of remedies." (ECF No. 4-1 at 5 (quoting *Tartaglia*, 961 A.2d 1167, 1179 (2008). But, Defendants overstate the importance of *Tartaglia*, where the Court was focused on the required elements for a successful CEPA claim and the quoted statement above was only introductory dicta. Also, the case cited by the *Targalia* Court for the proposition quoted by Defendants, *Catalane v. Gilian Instrument Corp.*, only upheld the dismissal of common-law claims of retaliation because they sought the same remedy as CEPA claims in litigation that had gone to trial. *Tartaglia*, 961 A.2d at 1179 (citing *Catalane*, 638 A.2d 1341, 1350 (N.J. Super. Ct. App. Div. 1994)). *Catalane*, in other words, does not support the proposition that CEPA preclusion is triggered by the filing of a Complaint or by other methods for instituting an action. This Court declines to chose between the dicta of *Young* and the dicta of *Tartaglia* as being the definitive statement on the precise contours of "institution of an action."

In *Rossi v. Vericare Mgmt., Inc.*, U.S. District Judge Freda L. Wolfson observed that some courts in this district have held the "institution of an action" language means plaintiffs waive "all other CEPA-related claims upon the filing" of a CEPA claim, such as *Hornung v. Weyerhaeuser Co., Inc.*, No. 06-2300, 2007 WL 2769646, at *6 (D.N.J. Sept. 21, 2007); *Hilburn v. Bayonne Parking Auth.*, No. 07-5211, 2009 WL 777147, at *3 (D.N.J. Mar. 20, 2009) (concluding that, "because the clear and unambiguous language of CEPA supports the interpretation that an action is 'instituted' upon filing, and because New Jersey courts have provided no authority to the contrary, the Court finds that Plaintiffs waived their CEPA-related claims upon filing their CEPA claim."), while others have held "the CEPA waiver does not attach until after the completion of discovery." *Rossi*, No. 13-6884, 2016 WL 6892075, at *4 (citing *Broad*, 16 F. Supp. 3d at

11

417; *see Chadwick v. St. James Smokehouse, Inc.*, No. 14-2708, 2015 U.S. Dist. LEXIS 38340, at *27-28, 2015 WL 1399121 (D.N.J. Mar. 26, 2015) ("A decision about CEPA waiver ought to be reached after discovery."); *Rubin v. Sultan Healthcare, Inc.*, No. 08-6175, 2009 U.S. Dist. LEXIS 41534, at *12, 2009 WL 1372272 (D.N.J. May 15, 2009) (concluding that "the CEPA waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to conduct discovery.").

Without a controlling decision from the New Jersey Supreme Court on this issue, Judge Wolfson looked to New Jersey's appellate courts "to predict what the New Jersey Supreme Court would decide." *Rossi*, 2016 WL 6892075, at *4 (citing *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011). Weighing *Maw* in light of the Supreme Court's dicta in *Young*, Judge Wolfson concluded the New Jersey Supreme Court likely would not require a plaintiff to elect remedies before discovery was completed. *Rossi,* 2016 WL 6892075, at *4.

Decisions from the Appellate Division since *Rossi* have not wavered from *Maw*. *See Rivera v. Dep't of Human Servs.*, No. A-0086-17T4, 2019 WL 1418098, at *16 n.7 (N.J. Super. Ct. App. Div. Mar. 28, 2019); *Bordone v. Passaic Pub. Library Tr.*, No. A-2299-15T4, 2018 WL 2271354, at *8 (N.J. Super. Ct. App. Div. May 18, 2018) (where the court rejected arguments that the point of election of remedies was before a case was submitted to a jury). Accordingly, the Court concludes Defendants' Motion to Dismiss Count Two's retaliation claim, because it is precluded by Court Four's CEPA retaliation claim, is **DENIED**.

The Court now considers Defendants arguments that Counts One and Two should be dismissed because they fail to state a claim for which relief can be granted.

### i.  Count One

Defendants contend their Motion should be granted as to Count One's Failure to Accommodate claim because Curro failed to allege sufficient facts to support allegations of such discrimination. (ECF N0. 4-1 at 6.) Specifically, Defendants argue Curro did not allege any facts associated with an accommodation request, such as whether Defendants knew of his alleged disability, received an accommodation request, failed to make a good faith effort to assist Curro, or whether Curro could have been reasonably accommodated but for Defendants' alleged lack of good faith. (*Id.* at 12.)

Curro counters that the Complaint makes clear "plaintiff was let go based upon a clear perception by defendants that he was unable to perform the essential functions of his job and in lieu of continuing to provide necessary reasonable accommodations pursuant to the interactive process. (ECF No. 5 at 32 (citing ECF No. 1-1 ¶¶ 21-22.)

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5–4.1; *see also Victor v. State*, 401 N.J. Super. 596, 609 (App. Div. 2008), *aff'd as modified*, 203 N.J. 383 (2010). The elements of an NJLAD claim vary based on the cause of action alleged. *Victor v. State*, 203 N.J. at 408 (listing the different *prima facie* elements for various NJLAD causes of action based on failure to hire, discriminatory discharge, retaliation, and hostile environment).

To establish a case of disability discrimination under the NJLAD, Curro must demonstrate:

> (1) he was handicapped or disabled within the meaning of the statue; (2) he was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) he suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after he had been removed from the position.

*Id.* To satisfy the second prong, Curro must further show (1) HD Supply knew of his disability; (2) he requested accommodations or assistance for his disability; (3) HD Supply made no good faith effort to assist; and (4) that he could have been reasonably accommodated but for HD Supply's lack of good faith. *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 237 (D.N.J. 2015) (citing *Victor,* 952 A.2d at 504; *Armstrong v. Burdette Tomlin Mem. Hosp.,* 438 F.3d 240, 246 (3d Cir. 2006); *Linton v. L'Oreal USA,* 2009 WL 838766, at *3 (D.N.J. Mar. 27, 2009). Once a request for accommodation is made, "both parties have a duty to assist in the search for an appropriate reasonable accommodation. *Tynan v. Vicinage 13 of Superior Court*, 798 A.2d 648, 656–57 (N.J. Super. App. Div. 2002) (citing *Taylor v. Phoenixville School District,* 184 F.3d 296, 312 (1999) (quoting *Mengine v. Runyon,* 114 F.3d 415, 419–20 (3d Cir. 1997))).

The Court begins by observing that Defendants' arguments do not challenge whether the Complaint sufficiently alleges Curro was disabled within the meaning of the NJLAD. Therefore, the Court concludes for the purposes of the Motion to Dismiss, where a plaintiff's allegations are taken as true, that Curro's allegations of herniated discs constitute a disability as contemplated by the NJLAD and the first prong of a failure-to-accommodate case.

Defendants contend Curro has not alleged facts to support the second prong, whether Defendants knew of his alleged disability. The Court disagrees. From a review of the Complaint it is apparent Curro clearly, even if sparsely, alleges his manager, Gallino, and his supervisors were upset about the workers' compensation claim arising from the car accident in which Curro suffered "severe back injuries, including herniated discs." (*See* ECF No. 1-1 ¶¶ 9, 11.) Curro further alleges

14

his manager threatened to fire Curro as a result of Plaintiff's pursuit of a workers' compensation claim. (*Id.* ¶ 11.) If HD Supply knew about the workers' compensation claim, it follows Defendants knew about Curro's alleged disability.

Defendants further contend Curro has not alleged facts indicating Curro requested accommodations or assistance for his disability. Curro's arguments infer two theories on requests for accommodations. First, Curro suggests the workers' compensation claim itself was a request for accommodation. (*See* ECF No. 5 at 31 ("management had become upset with his accident and accommodations he was pursuing, including his workers' compensation filing").) Second, Curro indicates the June 2017 report "regarding harassment and discrimination" was a request for accommodation. (ECF No. 1-1 ¶¶ 12-14.)

The New Jersey Supreme Court recently examined the contours of defining what constitutes reasonable accommodations in *Caraballo v. City of Jersey City Police Dep't.*, 204 A.3d 254 (2019). At issue was whether medical treatment qualified as a reasonable accommodation under the NJLAD. *Id.* at 261. The Court stated that because the NJLAD does not specifically address the concept of failure to accommodate, New Jersey's courts evaluate NJLAD claims "in accordance with the [American's With Disabilities Act]." *Id.* at 267 (quoting *Grande v. St. Clare's Health Sys.*, 164 A.3d 1030, 1041 (N.J. 2017)). The Court held that the term reasonable accommodation focuses on modification of work environments and the removal of workplace barriers in an "attempt to accommodate the <u>physical disability</u> of the employee," but courts "do not require the employer 'to acquiesce to the disabled employee's requests for certain benefits or remuneration.'" *Id.* (citing *Raspa v. Office of Sheriff of Gloucester*, 924 A.2d 435 (2007) (quoting *Jones v. Aluminum Shapes, Inc.*, 772 A.2d 34, 43 (N.J. Super. App. Div. 2001))). Specifically, the Court found that a medical procedure sought by the plaintiff was neither a

modification to the work environment nor a removal of a workplace barrier and the request for surgery could not therefore qualify as a reasonable accommodation under the NJLAD. *Caraballo*, 204 A.3d at 261–63.

The principles of *Caraballo* make clear that, because a workers' compensation claim also is not a modification of a work environment nor removal of workplace barriers, a workers' compensation claim cannot constitute a request for accommodation. Consequently, Curro has not pleaded facts on this theory sufficient to satisfy the second prong.

The Court now considers Curro's second theory, that his June 2017 report constituted a request for accommodation.

The Complaint states Curro "filed" a detailed report on harassment and discrimination. (ECF No. 1-1 ¶ 12.) The Complaint does not state either for whom this June 2017 report was intended or who received it. The Complaint states the report included the fact that Curro was "being targeted and/or retaliated against due to his filing of a workers' compensation claim." (*Id.*) The report also included the claim that HD Supply "has violated a number of statutes in New Jersey," such as the NJLAD, CEPA and the state's Workers' Compensation Law. (*Id.*) According to the Complaint, the report accused the company of "forcing him and other sales employees to work excessive hours and in unsafe working conditions, including forcing them to violate motor vehicle and other safety laws to meet unrealistic quotas regarding sales calls. (*Id.* at 14.) Curro concludes that "Defendants also failed to accommodate plaintiff's disability by terminating him during a time where he was entitled to certain reasonable accommodations" and "failed to engage plaintiff in the interactive process as to these reasonable accommodations." (*Id.* ¶ 22.)

The Third Circuit has stated when "an employer has adequate notice of an employee's disability, and the employee requests accommodations for the disability, it becomes the

16

responsibility of the employer to 'engage the employee in the interactive process of finding accommodations.'" *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006) (citing *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 317–320 (3d Cir. 1999). Here, the Court concludes Defendants had adequate notice of Curro's disability. However, the Court also concludes Curro failed to plead any facts demonstrating he requested accommodations for disability. Curro is "not required to show that he had requested a particular accommodation, which the employer refused, but rather only that the employer knew of the disability and the employee's desire for an accommodation. *Armstrong*, 438 F.3d at 246.

Curro's June 2017 report, as described in the Complaint, does not satisfy even this low bar because the Report is not a request for accommodation for his disability, even in the most general of terms. Rather, as described in the Complaint, the report raises issues applicable to any and/or all field representatives, such as: "plaintiff maintained that these quotas forced sales staff to work excessive hours without additional compensation and would necessarily require employees to violate motor vehicle, safety and/or parking laws to meet such quotas." (ECF No. 1-1 ¶ 15.) It is clear Curro was raising issues affecting the "sales staff" generally and not only those employees affected by herniated disc problems.

Even were the Court inclined to construe the June 2017 report as a request for accommodation, which it is not, Curro also fails to sufficiently plead facts supporting the fourth prong, which asks whether Curro's disability could have been reasonably accommodated but for HD Supply's lack of good faith. The Supreme Court has held that in employment discrimination cases, a plaintiff is not required to establish a *prima facie* case at the pleadings stage. *See Kelly v. HD Supply Holdings, Inc.*, No. 14-372, 2014 WL 5512251, at *3 (D.N.J. Oct. 31, 2014) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002).

Nonetheless, in the Complaint Curro has not even alleged that his alleged disability could be accommodated, let alone alleging what accommodations he requested. Accordingly, Defendants' Motion to Dismiss Count One's failure-to-accommodate claim for the failure to state a claim is **GRANTED**.

### ii.  Count Two

Defendants similarly contend Count Two's LAD retaliation claim should be dismissed because Curro failed to allege sufficient facts in support of his allegations. (ECF No. 4-1 at 6.) Specifically, Defendants maintain the Complaint does not contain "the slightest indication of what constituted the 'discriminatory' or 'harassing' behavior" allegedly violative of the LAD that Curro believed had occurred.

The NJLAD makes it illegal "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act[.]" *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013) (quoting N.J. Stat. Ann. 10:5–12(d)). To make a case of retaliation under the NJLAD, Curro must show (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 939 (3d Cir. 2009) (citing *Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001) (citations omitted)). The NJLAD is clear that Curro must show he engaged in activity protected by the

NJLAD. *See* N.J. Stat. Ann. 10:5-12(d). Disability is a status protected by the NJLAD. N.J. Stat. Ann. 10:5–12(a).[3]

Curro alleges Defendants retaliated against him, ultimately by terminating his employment, because of his disability and because he complained about harassment and discrimination he experienced after he filed a workers' compensation claim based on a disability arising from a workplace-related accident. (ECF No. ¶ 12.). In so alleging, Curro has sufficiently pleaded a claim for retaliation under the NJLAD.

The Court agrees the Complaint's factual details are sparse. However, the case law is clear that "as long as the complaint is made in a good faith belief that the conduct complained of violates the LAD, it suffices for purposes of pursuing a cause of action." *Battaglia*, 214 N.J. at 549, 70 A.3d at 620. Taking Curro's allegations as true, as required for a Rule 12(b)(6) Motion, the Court concludes Defendants' Motion to Dismiss Count Two for the failure to state a claim is **DENIED**.

IV.   **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss Count One is **GRANTED**, while Defendants' Motion to Dismiss Count Two is **DENIED**. An appropriate Order follows.

Date: June 29, 2020                    */s/ Brian R. Martinotti*_____
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**

---

[3] The NJLAD lists the following as protected statuses: "the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, pregnancy, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J. Stat. Ann. § 10:5-12(a).

19